☐ Original    ☐

**CLERK'S OFFICE**
**A TRUE COPY**
**Jan 31, 2022**
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| Information associated with the Instagram profile with URL | ) |
| https://www.intagram.com/lownotw_/ , Profile ID 269102910 that is stored at premises owned, | ) |
| maintained, controlled, or operated by Instagram, LLC, a company that is owned by | ) |
| Facebook, Inc. and headquartered in Menlo Park, California. | ) |

Case No. **22-M-351 (SCD)**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before    2-14-22   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Hon. Stephen C. Dries    .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of    07/27/2022    .

Date and time issued:    1-31-22 11:40 am    _____
*Judge's signature*

City and state:   Milwaukee, WI    _____   Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to information associated with the Instagram profile with URL

https://www.intagram.com/lownotw_/ , Profile ID 269102910 (**SUBJECT ACCOUNT #3**) that

is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company

that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

# ATTACHMENT B

## Items to be Seized

**I.** **Information to be disclosed by Instagram, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to the government for each account listed in Attachment A:

a.      All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers.

b.      All past and current usernames associated with the account.

c.      The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up.

d.      All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information.

e.      All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses.

f.      All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes.

g.      All communications or other messages sent or received by the account **from January 1, 2021 to the date of this Order.**

h.      All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content **from January 1, 2021 to the date of this Order.**

i.      All photographs and images in the user gallery for the account **from January 1, 2021 to the date of this Order.**

j.      All location data associated with the account, including geotags **from January 1, 2020 to the date of this Order.**

k.      All data and information that has been deleted by the user **from January 1, 2021 to the date of this Order.**

l.      A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user.

m.      A list of all users that the account has "unfollowed" or blocked.

n.      All privacy and account settings.

o.      All records of Instagram searches performed by the account, including all past searches saved by the account **from January 1, 2021 to the date of this Order.**

p.      All information about connections between the account and third-party websites and applications. And,

q.      All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

Instagram is hereby ordered to disclose the above information to the government no later than 14 days of issuance of this warrant.

2



CLERK'S OFFICE
A TRUE COPY
Jan 31, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of                         )
*(Briefly describe the property to be searched*          )
*or identify the person by name and address)*            )          Case No.   **22-M-351 (SCD)**
Information associated with the Instagram profile with URL https://www.intagram.com/lownotw_/ , Profile ID   )
269102910  that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a   )
company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.   )
                                                        )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 21 USC Sections 841(a)(1) & 846; 18 USC Sections 1956 & 1957 | Distribution of and conspiracy to distribute a controlled substance; laundering of monetary instruments and conspiracy to do so |

The application is based on these facts:

See Attached Affidavit

☐ Continued on the attached sheet.

☑ Delayed notice of __180__ days *(give exact ending date if more than 30 days:* __07/27/2022__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

ATF Special Agent Sean Carlson
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone__ _____ *(specify reliable electronic means).*

Date:  __1-31-22__

_____
*Judge's signature*

City and state:  Milwaukee, WI                    Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                  *Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.      I make this affidavit in support of an application for a search warrant for information associated with the URL https://www.instagram.com/100bandbrand/, Profile ID 870328519 (**SUBJECT ACCOUNT #2**), and the URL https://www.intagram.com/lownotw_/, Profile ID 269102910 (**SUBJECT ACCOUNT #3)** that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, (Instagram) a social-networking company owned by Facebook, Inc. and headquartered in San Francisco, California.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Instagram to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the **SUBJECT ACCOUNT #2** and **SUBJECT ACCOUNT #3.**

2.      The Affiant is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been so employed since November 2015 and I am currently assigned to the Milwaukee Field Office.  Prior to my employment at ATF, I was a Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years.

3.      As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits,

methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, analysis of phone and financial records, and arrests of numerous drug traffickers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. Through training and experience, I have performed countless hours of physical and digital surveillance and am aware that suspects will often take evasive action or employ methods to attempt to inhibit law enforcement's attempt to detect and monitor their illegal activities

4. Through training, experience, and discussions with other experienced agents:

a. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States.

b. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, and crack cocaine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances.

c. I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded, and coded. I also know the various code names used to describe controlled substances.

d. I know drug dealers often put telephones in the names of others (nominees) or obtain pre-paid cellular telephones from companies where no subscriber name or

address is required to distance themselves from telephones that they use to facilitate drug distribution. Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber; I also know that drug dealers tend to frequently change phone numbers in an attempt to avoid law enforcement detection.

e.     I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency to maintain and finance their ongoing drug business.

f.     I know it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments, and/or the transfer of funds and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them.

g.     I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their businesses, and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities or rival drug traffickers. These secure locations include, but are not limited to safes, briefcases, purses, locked filing cabinets, and hidden storage areas in natural voids of a residence.

h.     I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transferring, concealing and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank

3

checks, safe deposit box keys, and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages), businesses or other locations over which they maintain dominion and control.

   i.     I know large-scale drug traffickers often use electronic equipment such as telephones (i.e., land-lines and cellular phones), computers and/or other electronic devices, currency counting machines, and telephone answering machines/voicemail to generate, transfer, count, record and/or store the information described in the items above, as well as to conduct drug trafficking activities.

   j.     I know that drug traffickers often use social media accounts to further their drug trafficking and money laundering activities.

   k.     I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency.

   l.     I know drug traffickers commonly maintain addresses or telephone numbers in books, papers or electronically that reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization.

   5.     I am personally involved in the investigation of the offenses discussed in this affidavit and I am familiar with all aspects of this investigation. The statements contained in this affidavit are based on my knowledge and, in part, information provided by law enforcement

4

officers (LEO), including  (a) my personal knowledge and observations derived from participation in this investigation; (b) review of oral and written reports that I have received directly or indirectly from other LEOs about this and other drug-trafficking investigations; (c) discussions I personally had concerning this investigation with other experienced drug-trafficking investigators; (d) physical surveillance by the DEA, north central HIDTA and local law enforcement agencies, the results of which have been reported to me directly or indirectly; (e) public records; (f) review of telephone toll records, pen register and trap and trace information, location data and telephone subscriber information; (g) information provided by confidential source(s) working for law enforcement; (h) review of driver's license and automobile registration records; (i) records obtained from law enforcement databases; (j) the training and experience of other law enforcement officers involved in this investigation; and, (k) United States Postal Service records.

6.      Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 and 841(a)(1), conspiracy to distribute controlled substances and distribution of controlled substances, and violations of Title 18, United States Code, Sections 1956 and 1957, money laundering have been committed, are being committed, or will be committed by **Samuel A. MOORE**, and others.  As stated above, I have set forth only those facts that I believe are

5

necessary to establish probable cause to believe that evidence of violations set forth above occurred and that that probable cause exists to believe that the **SUJBECT ACCOUNT** described in Attachment A contains the items that are described in Attachment B.

## JURISDICTION

8.　This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## Probable Cause

9.　Since at least 2018, narcotics investigators in southeastern Wisconsin identified **Samuel A. MOORE (M/W, XX/XX/1999)** as a large-scale drug trafficker. Specifically, in 2018 a confidential source (CS) provided information that **MOORE** was selling large amounts of marijuana in the Milwaukee, Wisconsin area.

10.　Case agents are aware that in January 2019, United States Postal Service Office of the Inspector General (USPS OIG) Special Agent (SA) Edward O'Dwyer and Milwaukee Police Department Detective (Det.) Eugene Nagler identified a group of individuals from California and Wisconsin, to include **Samuel A. MOORE** that have been sending high grade marijuana and marijuana derivatives through the U.S. mail. The controlled substances are sent from California to southeastern Wisconsin, including Milwaukee, and the Chicagoland area.

### 1.　Parcel Seizures

11.　On February 22, 2019, SA O'Dwyer conducted routine parcel screenings at the Milwaukee mail processing annex, located at 7620 South 10th St., Oak Creek, Wisconsin. Special Agent O'Dwyer observed a suspicious United States Postal Service (USPS) Priority Mail

6

parcel displaying tracking number 9505 5125 0644 9051 1685 58. The parcel in question bore a handwritten label addressed to "Brittany Corl, 3005 W. Maryland Ave., Milwaukee, WI 53211," and postmarked on February 20, 2019, in Los Angeles, California 90057. A search of a law enforcement database revealed that the destination address contained a fictitious name.

12.     On February 22, 2019, SA O'Dwyer met with Milwaukee Police Det. Eugene Nagler and his narcotics canine "Flora" at the Milwaukee mail processing annex. Together, Det. Nagler and "Flora" are a certified Police Narcotics Detection Team accredited through the Indiana Law Enforcement Training Academy in the detection of controlled substances and other controlled substances made with like components. Once at the annex, "Flora" indicated and alerted to the subject parcel.

13.     As a result, on February 25, 2019, SA O'Dwyer applied for and received a federal search warrant for the subject parcel, issued by U.S. Magistrate Judge Nancy Joseph, Magistrate Number 19-833M(NJ). On the same date, the subject parcel was searched pursuant to the above-referenced warrant. Det. Nagler located two packages of suspected marijuana weighing approximately 1,025 grams (with packaging). The suspected marijuana was field tested by Det. Nagler and tested positive for THC, the active ingredient in marijuana.

14.     On February 25, 2019, upon opening the subject parcel pursuant to the search warrant, Det. Nagler discovered one (1) package of suspected marijuana weighing approximately 505 grams (w/packaging). The suspected marijuana was field tested by Det. Nagler which tested positive for the presence of THC. Det. Nagler subsequently connected the package mailed by **Samuel MOORE** to Richard ROARK (M/W, DOB XX/XX/1996). Det. Nagler reviewed United States Postal records and video surveillance in Los Angeles, California for the shipment of the package which depicted **Samuel MOORE** mailing the instant package, and the package

7

described below, at the Los Angeles California Post Office. As stated, one of the packages identified as suspicious from this shipment sent by **MOORE** was addressed to 3005 N. Maryland Avenue, Milwaukee, Wisconsin. Previously case agents identified Brianna KNIGGE (W/F, DOB XX/XX/1999), who resided at 3005 N. Maryland Ave., Milwaukee, Wisconsin, as ROARK's girlfriend. A review of open-source databases accessible to Det. Nagler further revealed that Richard ROARK previously resided at 12765 W. Hampton Ave., Butler, Wisconsin which is the shipping address for several other identified suspicious packages.

15.     Additionally, case agents know that on February 22, 2019, SA O'Dwyer located another suspicious package while conducting routine parcel screenings at the Milwaukee mail processing annex, 7620 S. 10th St., Oak Creek, Wisconsin 53154. This suspicious USPS Priority Mail parcel displayed tracking number 9505 5125 0644 9051 1685 41 and bore a handwritten label addressed to "Tyler Alvin Mass, 12765 W. Hampton Ave., Butler, WI 53007." This parcel bore a February 20, 2019 from Los Angeles, California 90057. A search of a law enforcement database determined that the destination address also contained a fictitious name.

16.     Again, on February 22, 2019, at the postal annex, "Flora" indicated and alerted to the subject parcel. On February 25, 2019, SA O'Dwyer applied for and received a federal search warrant for the subject parcel which was issued by U.S. Magistrate Judge Nancy Joseph, Magistrate Number 19-834M(NJ). On February 25, 2019, upon opening the subject parcel pursuant to the search warrant, Det. Nagler located one package of suspected marijuana weighing approximately 505 grams (with packaging). The suspected marijuana was field tested by Det. Nagler and tested positive for the presence of THC.

17.     Additionally, on May 30, 2019, United States Postal Inspector (USPI) Tyler Fink conducted routine parcel screenings at the Milwaukee Processing and Distribution Center (P &

DC), located at 345 W. St. Paul Avenue, Milwaukee, Wisconsin 53203. This inspection revealed a suspicious parcel identified as United States Postal Service Priority Mail Express parcel EE503582065US. The shipping label for the subject parcel indicated it was sent from Coco & Eve, 801 S. Olive St., #804, Los Angeles, CA 90014." The parcel bore a handwritten label addressed to "Jocelyn Rogers, 12765 W. Hampton Ave., #201, Butler WI 53007," and a May 28, 2019 postmark from Los Angeles, California 90017.

18. After searching a law enforcement database, Inspector Fink located a phone number for the origin address, 213-277-5060, and made contact with an employee of the Atelier Apartments who identified himself only as "Michael." "Michael" stated that he did not recognize the name of the sender and gave consent to search the subject parcel. Upon opening the subject parcel, Inspector Fink discovered eight (8) vacuum sealed plastic bags containing suspected THC vape cartridges with a total gross weight of approximately 5,070 grams which field tested positive for the presence of THC. Believing this package to be connected to Det. Nagler's investigation into previously seized packages of marijuana, Inspector Fink turned these items over to Det. Nagler. Det. Nagler is aware that the address 12765 W. Hampton Ave., #201, Butler, Wisconsin 53007 was previously identified as a recipient address for controlled substances sent from California to Wisconsin.

19. Through a review of United States Postal records and video surveillance collected in Los Angeles, California, case agents were able to identify and connect **Samuel A. MOORE** to the above-mentioned subject parcels sent through the mail.

### 2. Cash seizure from MOORE

20. On Sunday July 28, 2019, Milwaukee County Sheriff Deputy Daniel Schlueter, assigned to the Milwaukee County Sheriff Office Airport Division at the Milwaukee Mitchell

International Airport in the City of Milwaukee, was contacted by the Transportation Security Agency (TSA). A TSA official informed Deputy Schlueter that an individual carrying a large amount of U.S. currency made conflicting and suspicious statements at the screening station.

21.     Deputies Mazruczak and Schlueter responded to the security screening station and spoke with the lead screening agent who gave the following account. An individual identified as **Samuel A. MOORE** came through the screening station carrying a medium sized bag with a shoulder strap. During the screening process, the screening agents identified a very large amount of bulk cash. **MOORE** stated to the TSA agents, "Well it's my dad's stuff." **MOORE** indicated that he knew the cash totaled roughly $100,000 dollars; however, **MOORE** reiterated that the contents of the bag belonged to his father.  Investigators had previously identified **MOORE**'s father as Daniel T. MOORE (W/M, DOB XX/XX/1969). Pursuant to TSA policy, TSA officials photographed **MOORE**'s boarding pass, a Southwest flight to California, and identification. TSA officials then allowed him to proceed to the gate. Based upon this information, the deputies located **MOORE**. Upon arrival they spoke briefly to **MOORE** who attempted to walk away, stating he wasn't going to take that flight. **MOORE** was detained by the deputies and escorted to the Sheriff's Office substation at the airport.

22.     A pat down of **MOORE** revealed that **MOORE** possessed a wallet that contained two (2) additional identification cards. A review of the additional identifications revealed that they were forged and false. **MOORE** possessed an Arizona driver's license listing the name "Charles Harvey Peterson, XX/XX/1996, 2619 E. Pinchot Avenue, Phoenix, AZ 85016." The picture depicted on the driver's license did not match **MOORE**.

23.     **MOORE** also possessed a New Jersey driver's license listing the name "Samuel Preston **MOORE**, XX/XX/1997, 232 Nord Beach Road, Jersey City, NJ 08242," depicting a

photograph matching **MOORE**. Because **MOORE** possessed two false identifications, and at the time he was only nineteen years old, **MOORE** received a Milwaukee County citation, for forged/ falsified identification card by underage person.

24.    As a result of this stop, on July 28, 2019, Homeland Security Investigations (HSI) Special Agent Johnathan Cerf seized approximately $102,000.00 in cash and an Apple iPhone from **Samuel A. MOORE** at the Milwaukee airport.

25.    On August 5, 2019, case agents secured a search warrant for **MOORE**'s Apple iPhone. As the result of technical issues, only a partial extraction of the phone occurred. During review of the partial download, Det. Nagler observed a color photograph of a large amount of green plant material suspected to be marijuana, a color photograph of a large quantity of a yellow substance believed to be marijuana wax, a color video and picture of an individual believed to be **Samuel A. MOORE** displaying a large amount of U.S. currency in a vehicle.  Based upon his training and experience, Det. Nagler is familiar with the appearance of marijuana, marijuana wax, THC crumble and other marijuana products.

### 3.    MOORE uses social media to distribute controlled substances.

26.    Through this investigation, case agents are aware that **MOORE** utilized Instagram account "**imsam**," SUBJECT ACCOUNT #1, and posted frequently depicting images and videos of illicit drugs, firearms, and large sums of U.S. currency in addition to posting product for sale.

27.    On April 12, 2020, **MOORE** publicly posted to SUBJECT ACCOUNT #1 a video of a black Mercedes C63 AMG parked next to a blue Porsche.  During the video, case agents observed a partial Wisconsin license plate ending in WAK. An open search of Wisconsin

Department of Transportation records revealed a 2009 Mercedes C Sedan, black in color with registration 690-WAK, registered to Melfair Ibraimi, Hartford, Wisconsin.

28.     A search of social media databases found Ibraimi's Facebook page under the name "Mike Ibraimi." Photographs on this page matched Melfair Ibraimi's Wisconsin Department of Transportation driver's license photo.  Photographs on this page likewise matched photographs of the black Mercedes C63 AMG depicted on **MOORE's** Instagram page.  Case agents also discovered that Ibraimi is an associate of **MOORE's** on social media.

29.     A search of law enforcement databases revealed that in February 2020 Mefail Ibraimi had contact with law enforcement in the black Mercedes bearing registration 690-WAK. Washington County Sheriff's Deputy Dirk Stolz encountered Mefail Ibraimi in a traffic stop and Deputy Stolz reported that a strong odor of marijuana emanated from the vehicle.  During the course of the stop, Ibraimi informed Deputy Stolz that he had just returned from Chicago; that he had a concealed carry permit; and, that he was armed.  Deputy Stolz removed two handguns from Ibraimi's waistband. In a subsequent search of the vehicle, Deputy Stolz located two bullet proof vests as well as additional ammunition. Deputy Stolz stated that during the contact Ibraimi was sweating profusely despite an air temperature of less than 30 degrees.  Deputy Stolz also reported that Ibraimi was so nervous he nearly passed out and required seating on the curb.

30.     Deputy Stolz indicated that an even stronger odor of marijuana emanated from the trunk of the vehicle, but Deputy Stolz did not locate any marijuana. Based upon his training and experience, Deputy Stolz, who is familiar with the odor or marijuana, believed that either Ibraimi had just delivered marijuana or had marijuana secreted in a hidden compartment inside the vehicle. During the police contact, Ibraimi provided a cellular phone number of 608-448-1793.

31.     On April 13, 2020, case agents applied for and obtained an order to search Mefail Ibraimi's cellular phone from a Washington County Circuit Court Judge.  This Order allowed the case agents to receive call and text toll data as well as location information for the cellular phone.

32.     On April 14, 2020, case agents obtained a state search warrant for Instagram records related to **MOORE's** account "**imsam,**" SUBJECT ACCOUNT #1**,** bearing profile identification number 1637476506. On May 5, 2020, case agents received the records for **MOORE's** account. The records revealed an active Instagram account with numerous posts related to marijuana sales, as well as most messaging related to drug trafficking where other Instagram accounts contacted **MOORE's** account to facilitate purchases of marijuana.

33.     On April 17, 2020, case agents monitored location data and the pen and trap from the above-referenced Order, and **MOORE's** social media account.  **MOORE**, Ibraimi, and an unidentified female were observed with six (6) large boxes in downtown Los Angeles. Using cellphone location data and Google street-view, the shipping location was located and with assistance of the Los Angeles County Sheriff's Office, the packages were located on a UPS truck and seized. On April 21, 2020, Los Angeles County Sheriff's Office obtained search warrants for the six (6) boxes.  As a result of the search, authorities recovered 158 pounds (without packaging) of high-grade marijuana.

34.     On April 20, 2020, case agents observed a public post made to SUBJECT ACCOUNT #1 which stated, "How I wake up to a 100k loss?" "UPS you can suck my dick." Continuing to follow **MOORE's** social media posts and Ibraimi's cell phone location, it appeared **MOORE** and Ibraimi made trips to a large marijuana grow facility in the desert south of Barstow, California.

13

35.     On January 8, 2021, **MOORE** publicly posted the following to his Instagram page, **"imsam"** regarding the purchase of a Cadillac. **MOORE** posted a video tagged "Orlando Florida" depicting **MOORE** driving a Maserati with **MOORE's** dog, "Nyala," in the passenger side floorboard, and a large amount of U.S. currency on the center console. Subsequently, **MOORE** posted a video inside a car dealership with **MOORE** displaying a diamond encrusted watch and holding a large amount of U.S. currency (believed to be about $60,000.00), with text time-stamped 8:16 p.m. **MOORE** posted a video with the text, "Y'all B false Flexin papers on all my shit really pull up an pull off the lot type shitt." The video depicts **MOORE** sitting at a desk, with documents and a large amount of U.S. currency. The documents on the desk displayed the name ED MORSE CADILLAC.

36.     On January 8, 2021, **MOORE** continued to publicly post to SUBJECT ACCOUNT #1.  **MOORE** posted a video of himself driving a Cadillac SUV and holding U.S. currency. **MOORE** also posted a video with the text, "PLATINUM ... 2021 bringing new vibes an a new big bags!! A lot of you mfs getting cut or already cut off!!" The video depicted **MOORE** driving the Cadillac and documents were visible which displayed the name ED MORSE CADILLAC, Causeway Blvd., 33511. Detective Nagler located an Ed Morse Cadillac, www.edmorsecadillacbrandon.com, 11020 Causeway Blvd., Brandon, Florida 33511, (866) 881-5786. The name and location of this dealership is consistent with the documents observed in the videos.

37.     On January 12, 2021, **MOORE** posted on the public portion of SUBJECT ACCOUNT #1.  In part, **MOORE** posted the following:  A video with the accompanying text, "2000, IF IM SMOKING ON THIS SHIT YOU KNOW ITS SUPER VALID! ONLY 50 LEFT!! NOW RESPONDING TO ALL MY 1-5 PAC PLAYS! 2K SWIPE UP AND GET DOWN TO

CHICAGO BEFORE THESE 2K POUNDS DONT LAST!" **MOORE** also posted a video inside the Cadillac with a stack of U.S. currency on the steering console. The accompanying text stated, "FROM NOW ON, ANYBODY THAT SAYS THEY WANT SOMETHING AN DOESNT COME THROUGH FOR IT IS BLOCKED. ZERO TOLERANCE POLICY FOR WINDOW SHOPPERS / PEOPLE THAT WASTE MY TIME."

38.     On the same date, **MOORE** continued to post to the public portion of SUBJECT ACCOUNT #1. **MOORE** posted a video of himself driving the Cadillac with a large amount of U.S. currency and the accompanying text, "DO NOT SLEEP ON THIS COME UP!! WE ALL EATING ON THIS SIDE SWIPE UP TO JOIN UP." **MOORE** also posted a video of himself with a large amount of THC concentrate (wax, crumble); several videos of someone loading THC concentrate into a pipe and smoking THC concentrate; and several videos of THC concentrate contained in tupper ware bowls. **MOORE** also posted a video in his Cadillac with THC concentrate and U.S. currency along with text stating, "THESE SOLD OUT DATES IVE DONE 5 MINIUMS... ALL MY SINGLES ILL BE GETTING TO YOU SHORTLY!" Based upon their training, experience, and familiarity with the investigation, case agents are aware that these posts refer to the sale of either marijuana or marijuana derivative products.

39.     On January 16, 2021, using the public portion of SUBJECT ACCOUNT #1 **MOORE** posted a video with shipping box emojis and the accompanying text, "FLIPADELPHIA, Philadelphia, Pennsylvania, I'll be in your city tomorrow accepting all meet ups by appointment only! Swipe up to secure your spot, 100ps of crumble were available almost half already accounted for! Swipe up and do not miss this 24/hr sell out."

40.     On January 17, 2021, **MOORE** again posted to the public portion of SUBJECT ACCOUNT #1. **MOORE** posted an image with the accompanying text, "PHILLY MENU,

$1000 packs!! $2000 rumble! Bulk only swipe up for meet ups 24 hr sellouts come shop with the lowest prices on the east coast." **MOORE** also posted an image with the accompanying text, "Y'all weren't messin with the last packs, So i got a even better deal i have 30 of these bubbas im doing for $1100, $1000 on bulk, Swipe up ... great color great taste great smell cant go wrong with these Philadelphia." **MOORE** posted an image with text stating, "Where my east coast whales @? My big spenders swipe up i have something special special for y'all, packs pens edibles concentrate." Subsequently, **MOORE** posted a video displaying the counting of U.S. currency in an automatic money counter with text stating, "Already showin the kid love." **MOORE** further posted a video displaying a large amount of U.S. currency and a large quantity of THC Crumble with the accompanying text, "Another 10 piece!! bro took a 15 hour trip there and back! I must be beating plug prices."

41.    In part, on January 18, 2021, **MOORE** posted the following to the public portion of SUBJECT ACCOUNT #1.  An image of a snapchat with the accompanying text, "Blow my shit up @ATLANTA."  A video in **MOORE's** Cadillac, with three containers of THC crumble, and an unknown black male seated in the back with a large amount of currency and two "cash cards" on his lap using a smart phone with an audio of **MOORE** stating, "All the way from Ohio, Akron Ohio." **MOORE's** text on this post stated, "Now accepting all my break downs everybody that wanted under 10 swipe up!!" Based upon their training, experience, and familiarity with the investigation, case agents believe **MOORE** was now accepting customers who wanted to purchase under ten pounds of marijuana.

42.    **MOORE** also used SUBJECT ACCOUNT #1 to post a video of himself driving 108 miles per hour in his Cadillac with a large amount of U.S. currency in a bag and an accompanying text, "Hit 3 states in 2 hours." Similarly, **MOORE** posted a video of himself

16

driving the Cadillac with a large amount of U.S. currency in a bag and an accompanying text, "Bag Phillin in Philly, This shit just like home, Philly imma have to get out spot out here y'all showin mad love." **MOORE** posted an image with the text reading, "$$$2000, only 2K for crumble, swipe up east coast, #caliconnected (emoji of two cardboard shipping boxes) blessing all individuals and accepting all meet ups must verify! Philly city of brotherly love." Case agents are aware that "crumble" is a THC derivative product (i.e., THC concentrate). **MOORE** also posted a video of a money counter counting U.S. currency.

43. **MOORE**, using SUBJECT ACCOUNT #1, continued to post information regarding his whereabouts and the availability of marijuana and other THC products. For instance, MOORE posted a video of THC concentrates along with the text, "New York city, 2days, your next tap in, you wont want to miss this drop." **MOORE** also posted a video in the Cadillac with five containers of THC crumble, and an unidentified white male seated in the back with a large amount of currency. The text, "Wilmington, Delaware, Delaware just came correct!! Doing meet ups all day tap in or get left behind !!" accompanied the video. **MOORE** also shared a video showing blocked Instagram accounts along with the text, "This just from this week! If you see a mistaken error swipe up and verify, ill correct 95% of the time i am not wrong though."

44. On January 21, 2021, through his SUBJECT ACCOUNT #1 public Instagram stories, **MOORE** continued to promote his drug trafficking operation. **MOORE** posted a video displaying the New York City skyline with the accompanying text, " Up early for you NY, tap in, 7:30 am." **MOORE** posted, "Exotics are in Philly, New York, swipe up, ice cream sundae, prices will not be posted only 15 left swipe up and we will talk #'s, New York city." **MOORE** also posted a still image with the text, "MAC 1, 10 available, swipe up for price!" along with two videos showing a large amount of fresh suspected marijuana buds. Based upon their training,

17

experience and familiarity with the investigation, case agents are aware that the above refers to strains of marijuana and marijuana related products.

45. In addition, through his Instagram stories on SUBJECT ACCOUNT #1 **MOORE** also promoted his snapchat account which case agents also know he uses to distribute marijuana and marijuana related products. **MOORE** posted three videos promoting his snapchat account "@ATLANTA." One video displayed the text, "@atlanta, Packs - 1K and up." **MOORE** listed the following items and corresponding prices: Crumble - 2K/lb; Carts - $6; and, Edibles - $5; Based upon their training, experience and familiarity with the investigation, case agents believe that "packs" refers to one pound of marijuana, "crumble" refers to THC concentrates, and "carts" refers to THC vape cartridges, and "edibles" refers to THC edible products (i.e., gummies). The other two videos depicted bags of marijuana falling from the top of the video with the text, "@ATLANTA." On January 25, 2021, **MOORE** again used SUBJECT ACCOUNT #1 Instagram stories to promote his snapchat account @atlanta with the above-referenced items and prices.

46. On January 26, 2021, **MOORE** traveled to Chicago, Illinois to distribute controlled substances. Case agents are aware of this through **MOORE's** public Instagram posts (stories) to "imsam**."** At 6:27 a.m., **MOORE** posted a video driving on the highway tagged "Chicago Downtown." "6:27am, Chicago tap in only here for couple days be sure to secure your order." **MOORE** also posted a still image of a large amount of Canadian currency with the accompanying text, "Vancouver based, Where my nadians @??" **MOORE** additionally posted a still image of buildings / skyline believed to be Chicago with a text that read, "Chicago, 100 pounds of crumble. 100 pounds of asian bubbas, everything will be gone within couple days swipe up now, accepting all meet ups."

18

47.     On this same date, **MOORE** also posted three separate videos to SUBJECT **ACCOUNT** #1 depicting three separate drug deals in the Cadillac.  Each video displayed a large amount of U.S. currency and THC crumble. One of the posted videos contained a text, "Triple Verified."  **MOORE** also posted a video showing a large amount of suspected THC crumble and THC buds in black plastic bags and totes. Additionally, **MOORE** posted a video showing suspected THC buds in plastic bags along with the accompanying text "real flavors."

48.     On January 28, 2021, while in Chicago, Illinois, **MOORE** posted in part the following Instagram stories to his account "imsam**."  MOORE** posted a video stating he was "Held at gun point. Cracked me in my shit, split my shit up for some little ass money." Case agents are aware that **MOORE** had not filed a police report in Chicago, Illinois. As a follow up**, MOORE** posted a video on SUBJECT ACCOUNT #1 where he pulled a large amount of U.S. currency out of his bag throwing it on the floor repeating the statement, "Where the Gucci bag at?" The video also displayed a large amount of suspected THC crumble contained in totes.

49.     On this same date, **MOORE** continued to post to SUBJECT ACCOUNT #1. **MOORE** posted another video depicting a large amount of suspected THC crumble in containers in totes stating, "You had me in there with all of this shit and didn't take nothing you some fuckin bozos." Again, on January 28, 2021, **MOORE** posted a video from "MO" with an accompanying text stating, "If you burn a bridge be ready for whats about to happen, def going to get it back in blood ALLAH my witness." **MOORE** also overlayed text in the video stating**,** "This kid on his way back to philly crying cause he got his shit took by his own robbers."

50.     On January 28, 2021, **MOORE** further posted a still image of a cup of tea with the following text overlayed on the image, "I made easy half mill with dude i can only imagine what he made off me in the year i knew him, that goes to show u know matter what!! Close that

backdoor don't even give a person the chance to pull something shiesty. no matter how close you think that person is to you." **MOORE** continued his messaging on SUBJECT ACCOUNT #1, and posted a black background with the text stating, "Sometimes even in the game the all-stars get fouled! you wont see nun of those its up from here posts from me cause it been up!!! all yall watching my shit prayng for my downfall can eat a( ) i been doing this shit imma keep doing this shit, i cracked a quarter million this week half of it was in citys ive never been to in my life yall some real life rookies!"

51.     On the same date **MOORE** also posted a still image of a candle to SUBJECT ACCOUNT #1 with the following text accompanying the image, "Its funny that i actually seen it coming, this shit don't even surprise me anymore, 2021 has some crazy things in store for me i don't worry about the little l's i take, i charge that shit to the game, whats here today is gone tomorrow don't take nothng for granted cause you don't know when it could be taken from you in the blink of an eye, blessed to see another day hope yall feel the same." Continuing in a separate post with a black background **MOORE** stated, "This for all those rockin with me, you on the winning team just know cant nothing stop this train but the alphabet boyz, i've made 100+ people there first 100k.. that's 100+ familys eating cause of me that's a feeling like no other, everybody saying 2021 gonna be there year and how 2020 was such a terrible year, that's cause it was mine!! and 2021 mine too!! The amount of people i had to cutoff and dismiss is sickening!! but there will be more i wanna see everybody eat, just not at my table.. my table for only the realest 100." Based upon their training, experience, and familiarity with the investigation, case agents believe that **MOORE** is unconcerned about small losses ("i don't worry about the little l's i take"), and considers setbacks to be the cost of drug trafficking ("i charge that shit to the game").

20

Only the "alphabet boyz" (i.e., law enforcement agencies – DEA, FBI, ATF) could halt **MOORE's** activities.

52.     Finally, on January 28, 2021, **MOORE** posted a still image of the top portion of a Wisconsin concealed carry license, excluding the name and other identifying information of the holder. Accompanying this photograph **MOORE** included the text, "LICENSED SECURITY 24:7 FROM NOW ON."  While case agents are aware that **MOORE** is a convicted felon and as such disqualified from receiving a lawful Wisconsin concealed carry license, case agents believe that **MOORE** nonetheless sought to notify his social media viewers that he will be armed at all times.

53.     On February 1, 2021, **MOORE** publicly posted to his Instagram stories on SUBJECT ACCOUNT #1 a still image of **MOORE** holding a large amount of U.S. currency, tagged Milwaukee Wisconsin, with the accompanying text, "Different Telly, New racks..., I could never look back!!  Milwaukee I'm accepting all meet ups... today only!! swipe up to lock in your order." Based upon their training, experience, and familiarity with the investigation, case agents believe that **MOORE** notified his viewers that he either had a new telephone or telephone number ("Different Telly") and possessed over one thousand dollars in cash "new racks." Case agents are aware that drug traffickers often refer to a bundle of one thousand dollars as a "rack."

54.     **MOORE** also included videos displaying suspected THC crumble and suspected marijuana bud. Again, **MOORE** posted three videos on SUBJECT ACCOUNT #1 promoting **MOORE's** snapchat account "@ATLANTA." Two of the videos listing **MOORE's** snapchat account @atlanta also included marijuana and marijuana products and their respective prices as listed in paragraph 46.  The other video displayed bags of marijuana falling from the top of the video along with the text, "@ATLANTA."

21

55.     On this same date, **MOORE** used SUBJECT ACCOUNT #1 to post a still image captured from **MOORE's** snapchat account "@atlanta" displaying a computer screen showing a Charles Schwab account bearing 9.9 million dollars. The following text accompanied the image, "This kid does all my trading, add him @cash stock king."

56.     On February 9, 2021, **MOORE** made public Instagram posts to SUBJECT ACCOUNT #1. Specifically, a video depicted the purchase of new Apple iPhones with the text "MANDATORY."  The video also displayed an image of an Apple iPhone with the text "SWIPE UP FOR NEW NUMBER" "IF WE AINT MADE 100+ TOGETHER DONT EVEN ASK FOR THIS ONE."

57.     On March 1, 2021, a confidential informant (CI-2), working under the direction of law enforcement, arranged to purchase five pounds of crumble (i.e., a marijuana product containing THC concentrates) from **MOORE**.  Case agents are aware that CI-2 was arrested by police for misdemeanor resist/obstruct offenses and bail jumping.  These cases remain open and CI-2 is working with law enforcement for consideration in these open cases.  After arrest, CI-2 provided information about **MOORE**. Law enforcement authorities are aware that CI-2 has prior convictions for traffic and municipal ordinance offenses. Affiant believes CI-2's information is truthful because it has been corroborated by other aspects of this investigation.

58.     The controlled purchase between CI-2 and **MOORE** was arranged using **MOORE**'s Instagram account imsam - ID 1637476506 (SUBJECT ACCOUNT #1). Through the account imsam - ID 1637476506, **MOORE** provided both a price and location for the transaction.  Specifically, **MOORE** directed CI-2 to the area of S. 6th Street and Virginia Street, Milwaukee, Wisconsin, and instructed CI-2 where to park. Thereafter, **MOORE** informed CI-2 that a white pick-up truck would arrive to deliver the crumble. A short time later a white pick-up

22

truck arrived at the location, and an unknown individual distributed the crumble. CI-2 further related that after the transaction, **MOORE** video chatted with CI-2 making sure CI-2 received the five pounds of crumble and was satisfied. Case agents subjected a sample of the crumble to a field test and received positive results for the presence of Tetrahydrocannibinols (THC), the active ingredient in marijuana, with a weight of 2,650 grams.

59.     On March 1, 2021, shortly after the above-described controlled purchase of the THC crumble, City of Milwaukee police officers observed the same white pick-up truck, bearing Wisconsin license plate PA5800, driven by a white male, later identified as Kyle BRICKNER (W/M, DOB XX/XX/1998) leave the controlled purchase of THC crumble at 539 W. Virginia Street, Milwaukee, Wisconsin. The officers observed the white pick- up truck drive south on South 5th Street, then west on West National Avenue, and south on South 6th Street before entering the parking lot for the Mercantile Lofts, 611 W. National Avenue, Milwaukee, Wisconsin. Based upon their training, experience and familiarity with the investigation, case agents believe that BRICKNER engaged in counter surveillance maneuvers to avoid law enforcement detection.

60.     The officers observed BRICKNER exit the white pick-up truck with a small red shoulder bag and enter the building from the south entrance door. A short time later BRICKNER exited 611 W. National Avenue from the south building entrance door, carrying a tan plastic "Pick 'n Save" shopping bag, and re-entered the white pick-up truck. Officers observed BRICKNER drive back to 539 W. Virginia Street. A second white male later identified as Austyn HOCH, who was already parked at 539 W. Virginia Street, exited his vehicle and entered the front passenger side of the white pick-up truck. HOCH and BRICKNER met for a short period inside the vehicle before HOCH exited the truck and reentered his vehicle. BRICKNER,

driving the white pick-up truck, returned to 611 W. National Avenue, and entered the building via the south building entrance door.

61.    A short time later, after meeting with BRICKNER, law enforcement authorities arrested HOCH who was in possession of one pound of THC crumble.

62.    On April 20, 2021, the Honorable Stephen C. Dries, United States Magistrate Judge, authorized a search warrant for SUBJECT ACCOUNT #1.  On approximately May 11, 2021, case agents received the material covered under the search warrant.  Analysis of the returned material revealed previously unknown email addresses and telephone numbers associated with those involved in the enumerated offenses.  Additionally, investigators identified numerous conversations, previously unknown, where **MOORE** stated that he is willing to accept cash, bitcoin, or accept the trade of property in exchange for drugs.  From this material, case agents also observed **MOORE** conduct numerous transactions using the application "Cash App." "Cash App" allows individuals to transfer money securely over the internet.

63.    A further review of the Instagram material returned for SUBJECT ACCOUNT #1 allowed case agents to document numerous conversations where **MOORE** instructed prospective buyers to pick up drugs in Milwaukee, Madison, Chicago, or Los Angeles.  Additionally, the Instagram material revealed that MOORE directed his buyers to meet a third party under MOORE's employ at several locations in the City of Milwaukee to take delivery of the drugs.

64.    On April 27, 2021, **MOORE** made public Instagram posts to SUBJECT ACCOUNT #1.  In particular, **MOORE** posted a video that depicted a large amount of apparent THC edibles on a table as well as a hand-written note containing a list of suspected Marijuana strains available for purchase.

65. On that same date, **MOORE** also posted to SUBJECT ACCOUNT #1 a video depicting seven (7) different large plastic bags containing suspected raw marijuana buds. Each bag contained a label in front of it, detailing the purported strain of marijuana contained within each bag.

66. On May 3, 2021, **MOORE** made public Instagram posts to SUBJECT ACCOUNT #1. Specifically, **MOORE** posted several videos depicting a large amount of suspected raw marijuana available for purchase. **MOORE** also posted to this account a video depicting a large amount of suspected raw marijuana and a large amount of U.S. currency as it was counted in a gold money counting machine. Based upon their training, experience, and familiarity with the investigation, case agents believe that **MOORE** indicated through this video that the cash represented proceeds generated from the sale of marijuana.

67. On May 10, 2021, MOORE made public Instagram posts to SUBJECT ACCOUNT #1. Four videos posted to SUBJECT ACCOUNT #1 depicted a large quantity of different strains of suspected raw marijuana and purported THC edibles displayed in a high rise apartment. Investigators previously observed that **MOORE** routinely advertises this apartment as a "store" where customers are able to purchase his products.

68. From June 11 through June 13, 2021, **MOORE** made public posts to SUBJECT ACCOUNT #1. Several videos depicted a large amount of suspected raw marijuana and suspected marijuana extract products displayed for sale in **MOORE's** "store." Based upon their familiarity with the investigation, case agents believe this "store "is situated in a high rise apartment building located in Los Angeles, California.

69. From July 8 through July 13, 2021, **MOORE** made public Instagram posts to SUBJECT ACCOUNT #1. One specific video depicted a large amount of U.S. currency with a

gold money counter. Case agents also observed a large black garbage bag and plastic "totes" containing suspected marijuana. Over this same time-period, **MOORE** posted a screenshot of a "Cali Connected / CHI connected" Telegram social media account. The screenshot depicted an apparent menu of available product, as well as photographs and videos of suspected marijuana and prices.

70.     Based upon their training and experience, case agents are aware that Telegram is a social media application that those engaged in criminal activity have increasingly used. Case agents have learned that those involved in criminal activity have come to believe that Telegram offers greater concealment from law enforcement. Case agents are aware that Telegram is currently unable to provide data to law enforcement because all activity and data stored within the application are encrypted and rendered unreadable by anyone other than those participating in a real-time conversation with the account holder, i.e., **MOORE**. Case agents therefore believe that **MOORE** is additionally directing his Instagram followers to Telegrams in order to further conceal his on-going criminal activity from law enforcement.

**4.   Identification of Instagram accounts "100bandbrand" and "lownotw_."**

71.     In September 2021, case agents observed a posting to the public portion of SUBJECT ACCOUNT #1 where MOORE stated that he would no longer be using this account for his operation. At the time, MOORE directed customers to an account on the application Telegram.

72.     In early December 2021, HIDTA Analyst Martin Wilson conducted telephone toll analysis related to data obtained for 773-636-633, **MOORE's** drug line. During the analysis, Analyst Wilson identified Joseph C. CRADEN (W/M Dob xx/xx/2002) as a frequent caller to **MOORE's** drug line. Analyst Wilson's review of the data revealed that between August 6,

2021, to September 22, 2021, approximately 104 contacts between CRADEN and **MOORE's** drug line occurred. Analyst Wilson also conducted an analysis of toll data related to 323-979-1250, another cellular telephone belonging to **MOORE**. Between September 21, 2021, and December 21, 2017, Analyst Wilson located nine contacts.

73.     On December 21, 2021, Det. Nagler learned of an attempted armed carjacking and shooting involving Joseph C. CRADEN (W/M, DOB XX/XX/2002) and **Santos M.E. JIMENEZ (W/M, XX/XX/2002)** that occurred at 1151 W. Windlake Avenue, Milwaukee, Wisconsin. Det. Nagler had previously identified CRADEN as an associate of Samuel **MOORE's** as a result of the above-described telephone toll analysis.

74.     On December 22, 2021, Det. Nagler conducted a non-custodial interview of **JIMENEZ** regarding the events leading to the shooting. **JIMENEZ** stated he and CRADEN pulled up to the address at Windlake Avenue, "SEAN's" house. **JIMENEZ** stated they parked behind a silver Infinity. When **JIMENEZ** went to the trunk of CRADEN's vehicle to retrieve his jacket, **JIMENEZ** heard CRADEN yell his name. At this point, **JIMENEZ** stated he was grabbed from behind by an unknown black male, wearing a black face mask, and the suspect threw him to the ground. **JIMENEZ** related that he was able to get up off the ground and run down the street.

75.     **JIMENEZ** heard CRADEN's tires screech and then observed CRADEN's car stopped in the road. **JIMENEZ** related that CRADEN struggled with the two unknown subjects, and during this struggle CRADEN was shot. **JIMENEZ** stated that he could not identify the three subjects. **JIMENEZ** stated he did not know why they were robbed, but thought it was a random attack.

76. Det. Nagler asked **JIMENEZ** about his actions prior to the shooting. **JIMENEZ** stated he was in Chicago the night prior, December 21, 2021, and he purchased approximately five pounds of Marijuana for $10,000. **JIMENEZ** showed Det. Nagler the Instagram profiles **"100bandbrand"** and **"lownotw_."** **JIMENEZ** stated he purchased the marijuana from the user of the **"100bandbrand"** (**SUBJECT ACCOUNT #2)** account, and he identified him as **"SAM."** **JIMENEZ** stated the account **"lownotw_"** (**SUBJECT ACCOUNT #3**) was his account. **JIMENEZ** further related that he used **"lownotw_"** to purchase the marijuana from **"SAM."** Det. Nagler asked to see the conversation arranging the drug transaction; however, **JIMENEZ** stated that he deleted the conversation.

77. Det. Nagler also showed **JIMENEZ** a photograph of **Samuel MOORE**, with identifying information removed. **JIMENEZ** positively identified **MOORE** as the user of the **"100bandbrand"** account. **JIMENEZ** stated he has known **MOORE** for approximately "five to six months." During the interview of **JIMENEZ**, Det. Nagler photographed the following from **JIMENEZ's** phone depicting the **"100bandbrand"** Instagram profile:



*Photograph of JIMENEZ's phone displaying the profile 100bandbrand*



*Screenshot of the desktop computer view of the Instagram profile 100bandbrand*

78.    On December 22, 2021, Det. Nagler and Your Affiant observed the Instagram
**"100bandbrand"** account and determined the profile photograph posted on the account, which
is publicly available, is a color photograph of **Samuel A. MOORE**.  The photograph depicts
**MOORE** with a large quantity of a green plant material believed to be raw Marijuana visible in

29

the background. Det. Nagler next reviewed search warrant returns for **MOORE's** Instagram account **"imsam"** and observed several conversations in which **JIMENEZ's "lownotw_."** (**SUBJECT ACCOUNT #3)** purchased product from **MOORE** dating back to January 9, 2021.

79. On December 29, 2021, Det. Nagler observed a publicly visible video on the Instagram account "**100bandbrand**" (**SUBJECT ACCOUNT #2**), depicting a garage which housed **MOORE's** previously identified Arctic Cat snowmobile. Case agents had identified this item as **MOORE's** and determined that he frequently stores the snowmobile at property associated with Richard ROARK, whom investigators have previously identified as a member of **MOORE's** drug trafficking organization through cell phone positional data, surveillance, informant information and toll analysis.

80. At the time of the post, through court authorization, case agents monitored the positional data of the known phones of ROARK and **MOORE**. The positional data for the telephones indicated that both **MOORE** and ROARK were together in the area of 4990 Arthur Road, Slinger, Wisconsin. Previously, case agents identified 4990 Arthur Road, Slinger, Wisconsin, as the address of Richard ROARK's parents. Additionally, as the result of previous physical surveillance Det. Nagler recognized the depicted garage as the garage associated with 4990 Arthur Road, Slinger, Wisconsin.

81. Case agents believe because of the proliferation of social media and other forms of electronic communication through third party applications that are easily installed on cellular devices, narcotics distributors, including **Samuel A. MOORE** and **MOORE's** associates, are moving away from traditional forms of electronic communication (text message and voice calls) and moving toward communicating over social media applications such as Snapchat, Instagram, Facebook Messenger, Telegram, WhatsApp and/or other platforms that allow the users of those

applications to communicate through video, voice and messaging methods that are less susceptible to interception through traditional law enforcement methods.

82.     From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

83.     Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

84.     Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user may add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

85.     Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

86.     Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

87.     Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

88.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

89.     Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

90.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

91.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

32

92.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

93.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

94.     Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

95.     Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

96.     Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

97.     As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

33

conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time.  Further, Instagram account activity can show how and when the account was accessed or used.  For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation.  Additionally, Instagram builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner.  Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation.  For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or

34

consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

**Conclusion**

98.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations of Title 21, United States Code, Sections 846 and 841(a)(1) and Title 18, United States Code, Sections 1956 and 1957 may be located in the **SUBJECT ACCOUNT #2** and **SUBJECT ACCOUNT #3** described in Attachment A, all of which is detailed more specifically detailed in Attachment B, Items to be seized.

99.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Instagram.  Because the warrant will be served on Instagram, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the Instagram profile with URL

https://www.intagram.com/lownotw_/ , Profile ID 269102910 (**SUBJECT ACCOUNT #3)** that

is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company

that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

## ATTACHMENT B

### Items to be Seized

**I.      Information to be disclosed by Instagram, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to the government for each account listed in Attachment A:

a.      All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers.

b.      All past and current usernames associated with the account.

c.      The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up.

d.      All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information.

e.      All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses.

f.      All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes.

g.      All communications or other messages sent or received by the account **from January 1, 2021 to the date of this Order.**

h.      All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content **from January 1, 2021 to the date of this Order.**

i.      All photographs and images in the user gallery for the account **from January 1, 2021 to the date of this Order.**

j.      All location data associated with the account, including geotags **from January 1, 2020 to the date of this Order.**

k.     All data and information that has been deleted by the user **from January 1, 2021 to the date of this Order.**

l.     A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user.

m.     A list of all users that the account has "unfollowed" or blocked.

n.     All privacy and account settings.

o.     All records of Instagram searches performed by the account, including all past searches saved by the account **from January 1, 2021 to the date of this Order.**

p.     All information about connections between the account and third-party websites and applications. And,

q.     All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

Instagram is hereby ordered to disclose the above information to the government no later than 14 days of issuance of this warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Instagram, LLC, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Instagram, LLC. The attached records consist of _____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Instagram, LLC, and they were made by Instagram, LLC as a regular practice; and

b.      such records were generated by Instagram, LLC's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Instagram, LLC in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Instagram, LLC, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                            Signature